**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ADTILE TECHNOLOGIES INC., | Civil Action No. |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| PERION NETWORK LTD. AND INTERCEPT INTERACTIVE, INC. DBA UNDERTONE, | |
| Defendants. | |

**COMPLAINT**

Plaintiff Adtile Technologies Inc. ("Adtile" or "Plaintiff") files this Complaint against defendants Perion Network Ltd. ("Perion") and Intercept Interactive, Inc. dba Undertone ("Undertone" and collectively, "Defendants"), and demanding a trial by jury, alleges as follows:

**NATURE OF ACTION**

1.       Adtile, a small technology company located in San Diego, California, is the creator of a revolutionary method of mobile device advertising, known as "Motion Ads." Motion Ads allow users to interact with ads by tilting, twisting, or shaking their mobile device. In response to the user's kinetic motion, the Motion Ads respond with visual and audio effects. The impact of Motion Ads has been tremendous.  Historically, consumers interact with traditional mobile phone advertising for an average of one to three seconds.  With Motion Ads, consumers engage with the ads for an average of more than twenty seconds.  This expanded interaction period multiplies the time that the users are viewing an ad approximately ten-fold, resulting in dramatically increased benefit for advertisers.

2.      Perion describes itself as a global technology company, delivering advertising solutions to brands and publishers.  Perion's New York City-based digital advertising firm, Undertone, learned about Adtile's technology and pursued a relationship with Adtile to enable Undertone to sell Adtile's technology to its advertising clients.  However, Undertone's true intent was to obtain Adtile's technology, either by acquiring Adtile, or, when that did not work, by improper use of Adtile's intellectual property.

3.      In May 2014, Undertone proposed an exclusive licensing deal with Adtile, but Adtile declined.  In August 2014, Adtile and Undertone entered into a contract where Adtile would produce Motion Ads, and Undertone would sell the Motion Ads to its customers.  Over the next nine months, Adtile taught Undertone employees the key aspects of its Motion Ad technology.  In January 2015, Undertone pursued its acquisition of Adtile, but Adtile declined.  Instead of continuing to build the business relationship with Adtile, Undertone pursued improper means to obtain Adtile's technology.  Under the guise of pursuing the contractual relationship, Undertone employees sought and obtained as much information as possible from Adtile regarding the functioning of and technology behind the Motion Ads.  Once such information was gained, Undertone requested that the parties' agreement be terminated.  With concerns about Undertone's ongoing motives, Adtile agreed to the termination, and in June 2015, the contractual relationship between the parties ended.

4.      Just two weeks after Undertone signed the Termination Agreement, Undertone came out with its own motion-activated ads that were shockingly similar to Adtile's.  In addition, Undertone's mobile ads used Adtile's "handphone" image and Adtile's proprietary ornamentation, layout, and user experiences, thus causing significant confusion as to whether the ads were created by Undertone or Adtile.

5.      On or about December 1, 2015, Perion acquired Undertone.  Since that time, Defendants continue to produce the infringing mobile ads, using Adtile's confidential and trade secret information, and passing the ads off under the brand "Umotion."  Such activities mislead consumers into believing the ads were created with Defendants' technology and confuse consumers familiar with Adtile's Motion Ads, copyrights and trademarks.

6.      Based on these improper acts, Adtile brings this action against Defendants for breach of contract, breach of the covenant of good faith and fair dealing, misappropriation of trade secrets, misappropriation of confidential information, copyright infringement, trademark infringement, unfair competition, false designation of origin, common law trademark infringement, and common law unfair competition.

7.      As a result of such unlawful conduct, Adtile has suffered and, unless Defendants are enjoined, will continue to suffer irreparable injury.  Adtile therefore seeks injunctive relief, compensatory and punitive damages, and other relief.

**PARTIES**

8.      Plaintiff Adtile is a company organized under the laws of California with its principal place of business at 11750 Sorrento Valley Road, Suite 140, San Diego, California 92121.  Adtile is in the business of developing multi-sensor advertising technology and services for smartphones and tablets, with a focus on mobile Motion Ads.

9.      On information and belief, defendant Undertone is a marketing company organized under the laws of New York with a principal place of business at 340 Madison, 8th Floor, New York, New York 10173.

10.     On information and belief, defendant Perion is a company organized under the laws of Israel with a principal place of business at 1 Azrieli Center, Building A, 26 HaRokmim Street, Holon, Israel 5885849.

## JURISDICTION AND VENUE

11.     For those claims for relief arising under the Copyright Act, 17 U.S.C. § 501, *et seq.*, and under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, this court has original subject matter jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338(a) and (b) and 15 U.S.C. § 1121(a).

12.     This Court has supplemental jurisdiction over Plaintiff's additional claims under 28 U.S.C. § 1367(a).  These claims are so related to the claims in this case over which this Court has original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Adtile and Undertone executed one or more contracts under which they agreed to jurisdiction in this district and because Defendants conduct business in this district.

## FACTUAL ALLEGATIONS

*Initial Relationship Between Adtile and Undertone*

14.     On February 14, 2014, Undertone reached out to Adtile, expressing an interest in working with Adtile on Motion Ads.  At the time, Undertone's employees expressed to Adtile that they had never before done a motion-activated mobile advertisement, had little or no knowledge of motion-activated advertising technology, and were eager to license Adtile's technology for the revolutionary Motion Ads.

15.     On March 31, 2014, the parties entered into a Non-Disclosure Agreement ("NDA"), obligating Undertone to keep Adtile's proprietary information confidential and not to use it for any purpose other than in furtherance of the parties' relationship.  After the NDA was executed, Adtile began to divulge its trade secrets and proprietary know-how to Undertone.

16.     Adtile provided Undertone with a demo Motion Ad in July 2014, and in August Adtile provided Undertone with access to Adtile's developer documents.  Also in August 2014, Adtile coordinated with Undertone to hold a multi-day design and user experience training session for key Undertone sales, business development, design, and software development employees.

### License Agreement

17.     On August 18, 2014, the parties executed a Services and Software License Agreement ("License Agreement"), along with a new NDA.  Under the License Agreement, Adtile granted to Undertone a revocable, nonexclusive, non-sublicensable, non-transferable license to the object code version of the Licensed Software and the Licensed Documentation only for certain specified purposes, including internal training of Undertone employees, and demonstration, marketing, and promotion of the Licensed Software.  Undertone was specifically prohibited from redistributing the Licensed Software or Licensed Documentation to third parties.

18.     The License Agreement also states that all technology, including all code libraries including all code developed for the Ads and used by Adtile to provide the Services, remains the property of Adtile.

19.     Under the License Agreement, Undertone was granted the right to use, reproduce and distribute Adtile's trademarks and service marks in connection with the performance of Undertone's rights and obligations under this Agreement.  Any goodwill acquired from this use

was to inure to the benefit of Adtile.  Furthermore, Undertone was required to include a trademark attribution statement underneath any use of Adtile's marks.

20.     The NDA attached as Exhibit A to the License Agreement provides that Undertone could use Adtile's confidential information only for the purpose of the performance of the License Agreement and not for any other purpose.  It also requires that Undertone return all Adtile confidential information upon written request of Adtile.

**Transfer of Confidential Information**

21.     Starting in September 2014, Adtile and Undertone employees engaged in numerous conversations regarding Motion Ads via "Basecamp," a secure platform for communications between the parties.  These conversations generally consisted of Undertone employees asking Adtile employees whether certain functions were possible, and, where they were available, Adtile employees providing an explanation of how to accomplish the functions.

22.     During these Basecamp conversations, Adtile employees shared their expertise related to the functioning of Motion Ads, recommending to Undertone certain functions and arrangements over others in order to ensure the most successful Motion Ad experience.  For instance, in a Basecamp conversation in October 2014 regarding a Motion Ad for an advertiser, Undertone asked Adtile whether it was possible to incorporate a certain command.  Adtile responded that this was possible but that it would recommend against the particular command because it would be exhausting for the user.  Undertone then responded to Adtile:  "[W]e trust your judgment since you have more knowledge of what works."

23.     From August 2014 through June 2015, Adtile continued to transfer its trade secrets and proprietary know-how to Undertone.

24.     In January 2015, Undertone offered to acquire Adtile, and Adtile refused.  From January to March 2015, Undertone placed no new Motion Ad orders with Adtile, but continued to access the Basecamp and ask Adtile employees questions about features of the Motion Ads.

***Termination Agreement***

25.     In June 2015, after one final ad campaign, the parties terminated their relationship.

26.     The Termination Agreement, signed on June 26, 2015, terminates the License Agreement of August 2014 and provides that Undertone must return copies of the licensed software and licensed documentation to Adtile within 30 days of the termination effective date.

***Undertone's Passing Off of Adtile's Intellectual Property***

27.     Just two weeks after Undertone signed the Termination Agreement, Adtile discovered motion-activated ads for Visa and Discover, advertised as being developed exclusively by Undertone.  As shown by the screen shots below, the Discover ad uses Adtile's proprietary copyrighted "handphone" image.



28.     On July 22, 2015, Adtile discovered a blog post by Undertone featuring the Nestlé Perrier Motion Ad that Adtile had created for Undertone.  This blog post represented that the Motion Ad was Undertone's alone.

29.     On August 10, 2015, in response to these and other actions of Undertone, Adtile sent a letter to Undertone requesting that Undertone cease all use of Adtile's trade secrets, trademarks, and copyrights, and return all proprietary information as required under the License Agreement, NDAs, and Termination Agreement.

30.     On August 17, 2015, Adtile discovered another motion-activated ad, for Gerber, developed by Undertone, using Adtile's proprietary copyrighted "handphone" image.  On August 18, 2015, Adtile discovered yet another motion-activated ad produced by Undertone, this time for L'Oreal, which uses Adtile's proprietary ornamentation, layout, and user experiences as set forth in the Licensed Documentation under the License Agreement.  As shown by the screen shots below, the ad also uses Adtile's "handphone" image.



31.     On August 20, 2015, Undertone responded to Adtile's letter, claiming no wrongdoing.  In addition, Undertone stated it "has permanently ceased all use and display of Adtile's copyrighted 'handphone.'"

32.     On September 10, 2015, Adtile discovered another motion-activated ad by Undertone, this one for Wayward Pines.

33.     During this time period, June – October 2015, Adtile received a number of complaints from prospective clients and others in the industry expressing confusion based on the Undertone ads.

34.     Furthermore, upon information and belief, Undertone's mobile ads are created using Adtile's copyrighted software, known as the "Full Tilt Library."  On September 17, 2015, Adtile notified Undertone that it was using the Full Tilt Library in violation of Adtile's rights.  Undertone subsequently advised Adtile that it would "cease further use of Full Tilt to create UMotion ads."  However, such use of the Full Tilt Library continues.

35.     In September 2015, Undertone attended the Digital Marketing Exposition & Conference ("dmexco"), an international exposition and conference for the digital industry held in Germany with over 43,000 trade visitors.  In its promotional materials distributed at dmexco,

which are still available online, Undertone uses an image created by Adtile to demonstrate the capabilities of Motion Ads in connection with the advertisement of Undertone's new ad product. Undertone's dmexco promotional materials also incorporate verbatim language that Adtile has used to describe its Motion Ads.

36.     On October 1, 2015, Adtile learned that Undertone had received awards at the Mobile Media Summit based on the Nestlé Perrier Motion Ad that Adtile had created.  On information and belief, Undertone employees did nothing to correct the misperception that they alone created the ad.

37.     On October 6, 2015, Undertone notified Adtile it had commenced the destruction of Adtile's proprietary information and would notify Adtile when the process was complete.

38.     On October 7, 2015, Adtile discovered a motion-activated ad by Undertone, for Vita Coco.  This ad displays Adtile's "handphone" image and utilizes Adtile's proprietary ornamentation, layout, and user experiences.

39.     On November 16, 2015, Adtile discovered a motion-activated ad by Undertone, for Garmin.  The Garmin ad uses Adtile's proprietary ornamentation, layout, and user experiences.

***Defendants' Continued Passing Off of Adtile's Intellectual Property***

40.     By way of a December 1, 2015 press release, Perion announced that it acquired Undertone for $180 million.  On its website (www. Perion.com), Perion describes Undertone as "[o]ur digital ad firm."

41.     At the time of the acquisition, Perion knew or should have known that Adtile had put Undertone on notice that it was misusing Adtile's trade secret, proprietary, copyrighted and trademarked intellectual property.

42.     Adtile is informed and believes, and on that basis alleges, that, following the acquisition, Perion has been and continues to actively participate with Undertone in committing the acts complained of herein.  Perion has described the infringing Undertone mobile ads as part of its ad solutions, and part of the advertising products that Perion offers to its customers. Undertone and Perion have been producing and continue to produce mobile ads using Adtile's confidential and trade secret information and featuring Adtile's copyrights and trademarks.

43.     For example, on December 14, 2015, Adtile discovered additional motion-activated ads by Defendants, including one for Star Wars Gummy Vitamins.  The Star Wars Gummy Vitamins motion-activated ad again uses Adtile's "handphone" image and utilizes Adtile's proprietary ornamentation, layout, and user experiences as shown below.  The Star Wars Gummy Vitamins ad also reproduces and uses Adtile's copyrighted Full Tilt Library.



44.     On December 15, 2015, Adtile discovered yet another motion-activated ad by Defendants, this time for Campbell's Soup.  The ad utilizes Adtile's proprietary ornamentation, layout, and user experiences.

45.     To this day, Defendants continue to create motion-activated ads using Adtile's trade secrets, copyrights, and trademarks, in direct competition with Adtile.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

46.     Plaintiff incorporates by reference as though fully set forth herein each of the preceding allegations of Paragraphs l through 45 of this Complaint.

47.     Undertone and Adtile entered into several valid and binding contracts, including two NDAs, the License Agreement, and the Termination Agreement.

48.     These agreements require that Undertone use Adtile's intellectual property and other confidential and proprietary information only for the purpose of the performance of the License Agreement and not for any other purpose, and that Undertone return all confidential information within 30 days of execution of the Termination Agreement.

49.     Undertone breached the License Agreement, NDAs, and Termination Agreement by using Adtile materials beyond the scope of the agreements, using Adtile proprietary information to develop Umotion ads, and failing to return software and documentation.

50.     As a direct and proximate result of Undertone's breaches of these agreements, Adtile has suffered damages in an amount to be determined at trial.

51.     Undertone's breaches have caused and continue to cause Adtile irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth herein is necessary to provide Adtile with complete relief.

## SECOND CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing)

52.     Plaintiff incorporates by reference as though fully set forth herein each of the preceding allegations of Paragraphs l through 51 of this Complaint.

53.     The agreements between Undertone and Adtile each contain an implied covenant of good faith and fair dealing.

54.     Undertone breached the covenants of good faith and fair dealing by continuing to use information shared under confidentiality obligations to compete against Adtile, contrary to the intent of the parties in entering into the agreements.

55.     As a direct and proximate result of Undertone's breaches of this covenant, Adtile has suffered damages in an amount to be determined at trial.

56.     Undertone's breaches have caused and continue to cause Adtile irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth herein is necessary to provide Adtile with complete relief.

## THIRD CAUSE OF ACTION

### (Misappropriation of Trade Secrets)

57.     Plaintiff incorporates by reference as though fully set forth herein each of the preceding allegations of Paragraphs 1 through 56 of this Complaint.

58.     Plaintiff Adtile is the owner of trade secrets as defined by the Uniform Trade Secrets Act, 6 *Del. C*. sections 2001-2009.

59.     Plaintiff's trade secrets include but are not limited to technical information relating to effective use of mobile device features and combinations of features in Motion Ads, which Motion Ad features are more or less effective with consumers, and other confidential and proprietary information related to Adtile's Motion Ads ("Adtile Proprietary Information").

60.     Plaintiff's trade secrets derive independent actual and potential economic value from not being generally known or available to the public or other persons who can obtain economic value from their disclosure or use.

61.     Plaintiff's trade secrets have significant value, resulting from significant investment of time and resources.

62.     Plaintiff has made, and continues to make, efforts that are reasonable under the circumstances to maintain the secrecy of its trade secrets.

63.     Plaintiff's trade secrets described above were trade secrets at the time that they were misappropriated by Defendants.

64.     Defendants improperly used and continue to use Adtile's trade secrets without Adtile's consent.  For example, Undertone improperly used Adtile's trade secrets in its development of the Undertone Umotion ads, which were deployed, and which Defendants plan to deploy, on their own or with the assistance of third parties.

65.     As a natural and proximate result of Defendants' misappropriation, Adtile has suffered damages in an amount to be proven at trial.

66.     Defendants' trade secret misappropriation has caused and continues to cause Adtile irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth herein is necessary to provide Adtile with complete relief.

67.     In misappropriating Adtile's trade secrets, Defendants acted willfully and maliciously.  Adtile is thus entitled to punitive and exemplary damages against Defendants pursuant to section 2003 of Title 6.

## FOURTH CAUSE OF ACTION

### (Misappropriation of Confidential Information)

68.     Plaintiff incorporates by reference as though fully set forth herein each of the preceding allegations of Paragraphs 1 through 67 of this Complaint.

69.     Adtile's Proprietary Information is confidential to Adtile.

70.     By misappropriating Adtile's Proprietary Information as aforesaid despite their duty to recognize, respect and maintain its confidentiality, Defendants have inflicted damages upon Adtile, in an amount to be determined at trial.

71.     Based on Defendants' willful and malicious misappropriation of Adtile's Proprietary Information, Adtile is also entitled to exemplary damages and attorneys' fees.

72.     Unless Defendants are restrained and enjoined by this Court, Defendants' actions will continue to cause irreparable harm and injury to Adtile, justifying an injunction as set forth herein.

## FIFTH CAUSE OF ACTION

### (Copyright Infringement – 17 U.S.C. § 501, *et seq.*)

73.     Plaintiff incorporates by reference as though fully set forth herein each of the preceding allegations of Paragraphs 1 through 72 of this Complaint.

74.     Adtile is the owner of an original work in the "handphone" image.  The "handphone" image constitutes copyrightable subject matter under the laws of the United States.

75.     Adtile owns a valid copyright for its "handphone" image, which is registered with the United States Copyright Office.  A true and correct copy of the Certificate of Registration, bearing United States Copyright Registration VA0001959683 is attached hereto as Exhibit A. The "handphone" image is depicted below.



76.     Defendants, with full knowledge of Adtile's rights, had access to the "handphone" image and copied constituent original elements of the "handphone" image, infringing Adtile's copyright by displaying, publishing, and distributing their Umotion ads which contained the "handphone" image.  The "handphone" image present on the Umotion ads is substantially similar to Adtile's copyrighted "handphone" image.

77.     Adtile is the owner of an original work in the Full Tilt Library, which constitutes copyrightable subject matter under the laws of the United States.

78.     Adtile owns a valid copyright for the Full Tilt Library, which is registered with the United States Copyright Office.  A true and correct copy of the Certificate of Registration, bearing United States Copyright Registration TX8-068-504 is attached hereto as Exhibit B.

79.     Defendants, with full knowledge of and in violation of Adtile's rights, had access to the Full Tilt Library and copied constituent original elements of the source code, infringing Adtile's copyright by creating and distributing Umotion ads using the Full Tilt Library.  Source code in the Umotion ads is substantially similar to the Full Tilt Library source code owned by Adtile.

80.     As a direct and proximate result of Defendants' infringement, Adtile has suffered damages in an amount to be determined at trial.  Additionally, Adtile has incurred and will incur liability for costs and attorneys' fees.

81.     Upon information and belief, Defendants' acts were in conscious and willful disregard for Adtile's rights.

82.     Defendants' infringement has caused and continues to cause Adtile irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth herein is necessary to provide Adtile with complete relief.

## SIXTH CAUSE OF ACTION

### (Trademark Infringement – 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a))

83.     Plaintiff incorporates by reference as though fully set forth herein each of the preceding allegations of Paragraphs 1 through 82 of this Complaint.

84.     Adtile owns a valid, protectable trademark in its "handphone" design.  Adtile has invested significant effort and funds in marketing and promoting its Motion Ads sold in conjunction with the "handphone" design.  As a result of the substantial marketing and promotion for and the significant sales and users of Adtile's Motion Ads, consumers associate the "handphone" mark with Adtile.  Thus, the mark is inherently distinctive and has acquired secondary meaning in the marketplace.  Additionally, Adtile has filed a trademark application for the "handphone" design with the U.S. Patent and Trademark Office, U.S. Trademark Application Serial No. 86/739,803 (the "Handphone Mark").

85.     In conjunction with the Umotion ads, Defendants have used, and continue to use, a "handphone" design that is extremely similar, if not identical, to Adtile's Handphone Mark.

86.     Defendants' use of Adtile's trademark is likely to cause confusion as to the source or sponsorship of its ads bearing the "handphone" design, or as to the affiliation or connection between Defendants and Adtile.  Consumers encountering Defendants' ads bearing the Handphone Mark are likely to believe, incorrectly, that the ad originates from or is sponsored or approved by Adtile.

87.     Adtile also owns rights in a family of "Motion" marks, including the registered marks MOTION ADS, U.S. Trademark Registration No. 4770531, and MOBILE IN MOTION, U.S. Trademark Registration No. 4868327 (the "Adtile Motion Marks").  As such, consumers have come to associate the term "Motion" in connection with mobile ads with Adtile.  True and correct copies of the foregoing registrations are attached hereto as Exhibit C.

88.     Undertone filed a trademark application for the UMOTION mark, U.S. Trademark Application Serial No. 86/553,029, in Class 35 for advertising via mobile devices, among other things.  Defendants use this mark in connection with mobile ads.

89.     Defendants' use of the mark UMOTION in connection with overlapping services to those of Adtile is likely to cause confusion as to the source or sponsorship of Defendants' ads bearing this mark, or as to the affiliation or connection between Defendants and Adtile.  Consumers who encounter Defendants' UMOTION ads are likely to incorrectly believe that the ads originate with or are sponsored by Adtile.

90.     Adtile's uses of its trademarks predate any alleged use by Defendants in the United States.

91.     As a direct and proximate result of Defendants' infringement, Adtile has suffered damages in an amount to be determined at trial.

92.     Defendants' infringement has caused and continues to cause Adtile irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth herein is necessary to provide Adtile with complete relief.

93.     Upon information and belief, Defendants' acts were in conscious and willful disregard for Adtile's rights, and the resulting damage to Adtile is such as to warrant the trebling of damages in order to provide just compensation.

## SEVENTH CAUSE OF ACTION

### (Unfair Competition – 15 U.S.C. § 1125(a))

94.     Plaintiff incorporates by reference as though fully set forth herein each of the preceding allegations of Paragraphs 1 through 93 of this Complaint.

95.     Defendants' conduct complained of herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

96.     Adtile has been seriously and irreparably damaged as a result of Defendants' unlawful conduct and will continue to be seriously and irreparably damaged unless Defendants' conduct is enjoined.

97.     Upon information and belief, as a result of the acts of Defendants, Adtile has suffered and will continue to suffer monetary damages in an amount not yet determined. Additionally, Adtile has incurred and will incur liability for costs and attorneys' fees.

98.     Defendants' conduct complained of herein was intentional, malicious, and willful.

99.     Unless Defendants are restrained and enjoined by this Court, Defendants' actions will continue to cause irreparable harm and injury to Adtile.

### EIGHTH CAUSE OF ACTION

### (False Designation of Origin – 15 U.S.C. § 1125(a))

100.     Plaintiff incorporates by reference as though fully set forth herein each of the preceding allegations of Paragraphs 1 through 99 of this Complaint.

101.     By misappropriating, using, and copying Adtile's Handphone Mark and family of "Motion" marks, Defendants are misrepresenting and falsely describing to the general public and others the origin, sponsorship, or approval of their mobile ads, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

102.     Defendants' continuing conduct has caused, and unless enjoined by this Court, is likely to continue to cause Adtile to suffer irreparable harm.

103.     As a direct and proximate result of the foregoing acts of Defendants, Adtile has suffered and will continue to suffer monetary damages in an amount that is not presently ascertainable but will be established at trial.

104.     Upon information and belief, Defendants' acts were in conscious and willful disregard for Adtile's rights, and the resulting damage to Adtile is such as to warrant the trebling of damages in order to provide just compensation.

### NINTH CAUSE OF ACTION

### (Common Law Trademark Infringement)

105.     Plaintiff incorporates by reference as though fully set forth herein each of the preceding allegations of Paragraphs 1 through 104 of this Complaint.

106.    By reason of Adtile's continuous use and promotion of the Handphone Mark and Adtile Motion Marks, as well as the inherent distinctiveness of the marks, consumers associate and recognize the Handphone Mark and Adtile Motion Marks as representing a single, even if anonymous, source or sponsor of goods, and therefore, the Handphone Mark and Adtile Motion Marks are protectable trademarks at common law.

107.    Adtile's common law trademark rights in the Handphone Mark and Adtile Motion Marks are superior to any rights that Defendants may claim in and to these trademarks.

108.    Defendants' uses of the Handphone Mark and Adtile Motion Marks in connection with the advertising, marketing, promotion, offer for sale, sale, and distribution of goods and services is likely to cause confusion in that recipients thereof and others who see Defendants' uses of the Handphone Mark and Adtile Motion Marks will be likely to mistakenly believe such goods and services are distributed with the authorization of Adtile, or that Defendants and Adtile are affiliated, all to the detriment of Adtile.

109.    On information and belief, by reason of Defendants' actions alleged herein, Adtile has suffered, and will continue to suffer, irreparable injury to its rights and suffer substantial loss of goodwill in the value of its Handphone Mark and Adtile Motion Marks unless and until Defendants are enjoined from continuing its wrongful acts.

110.    On information and belief, by reason of Defendants' actions alleged herein, Adtile has been damaged in an amount not presently ascertained, and such damage will continue and increase unless and until Defendants are enjoined from continuing their wrongful acts.

111.    Upon information and belief, Defendants' conduct in this cause of action is willful, wanton, malicious, oppressive, and in conscious disregard of Adtile's rights in its

Handphone Mark and Adtile Motion Marks, justifying the imposition of punitive and exemplary damages.

## TENTH CAUSE OF ACTION

### (Common Law Unfair Competition)

112.    Plaintiff incorporates by reference as though fully set forth herein each of the preceding allegations of Paragraphs 1 through 111 of this Complaint.

113.    Defendants' actions in connection with the use of Adtile's proprietary and trade secret information, as well as the use of the Handphone Mark and Adtile Motion Marks, are likely to cause confusion, to cause misrepresentation, and/or to cause mistake or to deceive the public as to the affiliation, approval, sponsorship or connection between Defendants and Adtile, and such actions thereby constitute unfair competition at common law.

114.    On information and belief, as a result of Defendants' acts of unfair competition, Adtile has suffered and will continue to suffer damages, and Defendants have been unjustly enriched.

115.    On information and belief, by reason of Defendants' actions, Adtile has suffered, and will continue to suffer, irreparable harm for which Adtile has no adequate remedy at law unless and until Defendants are enjoined from continuing its wrongful acts.

116.    Upon information and belief, Defendants' conduct in this cause of action is willful, wanton, malicious, oppressive, and in conscious disregard of Adtile's rights, justifying the imposition of punitive and exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.      Damages from Defendants according to proof;

2.      For an Order requiring Defendants to return Adtile's Proprietary Information;

3.      For preliminary and permanent injunctive relief to enjoin Defendants and their agents, servants, and employees, and all persons and/or entities acting under, in concert with, or for them, from:

(a)      Using or disclosing any of Adtile's trade secrets, confidential know-how, or proprietary information regarding Adtile's motion ads in any way;

(b)      Infringing Adtile's copyright in the "handphone" image;

(c)      Using any of Adtile's trademarks, and/or any other designations that are colorable imitations of and/or are confusingly similar to Adtile's trademarks, in connection with the unauthorized advertising, distribution, marketing, promotion, offering for sale, and/or sale of products or services;

(d)      Representing in any manner, or by any method whatsoever, that Defendants are sponsored, approved, or authorized by Adtile; and

(e)      Unfairly competing with Adtile in any manner;

4.      For punitive and exemplary damages as may be provided by law;

5.      For Plaintiff's attorneys' fees and costs as may be provided by law;

6.      For prejudgment and post-judgment interest; and

7.      For such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all claims and issues that are so triable.

MORRIS NICHOLS ARSHT & TUNNEL LLP

/s/ Donald Reid
_____

Donald E. Reid (#1058)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
302.351.9219
dreid@mnat.com

*Attorneys for Plaintiff*
*Adtile Technologies Inc.*

OF COUNSEL:

Greg L. Lippetz (Bar No. 154228)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
650.739.3968
glippetz@jonesday.com

December 22, 2015