IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADTILE TECHNOLOGIES INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 15-1193-SLR |
| ) | |
| PERION NETWORK LTD. and ) | |
| INTERCEPT INTERACTIVE, INC. ) | |
| d/b/a UNDERTONE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

At Wilmington this 23rd day of June, 2016, having reviewed the papers filed in connection with Adtile's motion for preliminary injunction, and having heard oral argument on same;

IT IS ORDERED that Adtile's motion (D.I. 11) is denied, for the reasons that follow:

1. **Procedural background.** On December 22, 2015, plaintiff Adtile Technologies, Inc. ("Adtile") filed a complaint alleging, inter alia, Delaware statutory misappropriation of trade secrets, common law misappropriation of confidential information, copyright infringement, and Lanham Act false designation of origin and unfair competition, against defendants Perion Network Ltd. ("Perion") and Intercept Interactive, Inc. d/b/a Undertone ("Undertone") (collectively, "defendants"). (D.I. 1) On February 19, 2016, Perion moved to dismiss the complaint for lack of personal jurisdiction and Undertone moved to stay the present action and compel arbitration.

(D.I. 22, 25) The court has jurisdiction over the copyright and Lanham Act claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) and 15 U.S.C. § 1121(a). The court has supplemental jurisdiction over Adtile's additional claims pursuant to 28 U.S.C. § 1367(a).

2. Adtile is a company organized under the laws of the State of California with its principal place of business in San Diego, California. Adtile develops multi-sensor advertising technology and services for smartphones and tablets, with a focus on mobile "Motion Ads." (D.I. 1 at ¶ 8) Undertone is a marketing company organized under the laws of the State of New York with a principal place of business in New York, New York. Perion is a company organized under the laws of Israel with a principal place of business in Holon, Israel. (D.I. 1 at ¶¶ 9-10)

3. **Factual background.** Since 2013, Adtile has spent considerable time on its product development and secured over $7 million in investments to develop and launch Motion Ads. Adtile's Motion Ads provide users a unique motion-activated advertising experience, allowing them to interact with ads by tilting, twisting or drawing a design and having the ads respond to such input with visual and audio effects. (D.I. 12 at 1-3) Adtile owns copyright registrations for its "handphone" image[1] and "Full-Tilt Library software," and has sought trademark registration for the "handphone" image and the phrase "Motion Ads." Adtile alleges that it possesses certain trade secret and confidential information related to its Motion Ads, as well as common law trademark rights in its proprietary "handphone" image. (D.I. 13 at ¶¶ 6-22, exs. E-H)

---

[1] A simple black and white icon of fingers holding a phone.

2

4. On February 14, 2014, Undertone and Adtile entered into discussions regarding Adtile's sensor-enabled technology pursuant to a non-disclosure agreement ("NDA"). In July 2014, Adtile provided a demo Motion Ad to Undertone. On August 18, 2014, the parties entered into a license agreement ("License Agreement") and a new NDA, which provides that Adtile would produce Motion Ads and Undertone would sell such ads to its customers. Adtile was still developing its "Ad Builder," software that allows users to create Motion Ads using Adtile's technology. The parties worked together over the next nine months using Undertone's secure platform to communicate. (D.I. 12 at 4-6) Adtile alleges that it agreed to teach Undertone how to create Motion Ads with the object code of the licensed software. (*Id.* at 5) Undertone alleges that it purchased eight motion-activated ads built by Adtile. In two such ads, Adtile used the handphone image, without attribution. (D.I. 30 at 5)

5. The License Agreement provided that Adtile owned the proprietary licensed software product, the Ad Builder (the "Licensed Software"), and any related documentation (the "Licensed Documentation"). (D.I. 33, ex. 11 at B) Undertone was allowed to use the Licensed Software and Licensed Documentation for its internal purposes, but Adtile was allowed to approve the showing of any ads created with the Licensed Software. (*Id.* at § 1.1(a)) The License Agreement further provided that Undertone would own any "deliverables," i.e., work product produced by Adtile for Undertone. Undertone was to be deemed the author of the deliverables for copyright purposes. Adtile retained the ownership of "all technology," including the code libraries developed for the Motion Ads and used by Adtile to provide deliverables. The License

3

Agreement specifically permitted Undertone to purchase, license, or develop similar or competitive technology, products, or services. (*Id.* at § 2.2)

6. The Full-Tilt Library software was publicly available on the Internet as of February 2015, under a broad "open source" license. Adtile "acquired the Full-Tilt Library in August of 2015" and obtained a copyright registration thereon. (D.I. 12 at 15; D.I. 31 at ¶¶ 20-24; D.I. 37 at ¶ 4)

7. Adtile alleges that from February to April 2015, Undertone placed only one new Motion Ad order with Adtile, but continued to access the secure platform and ask Adtile's employees questions about the Motion Ads' features. According to Adtile, after accessing Adtile's proprietary information, Undertone sought to terminate the agreement. (D.I. 12 at 7) Undertone alleges that it sought termination after Adtile began refusing to provide Motion Ads under the License Agreement. Moreover, Adtile had still not provided Undertone with the Licensed Software. (D.I. 30 at 5-6) On June 12, 2015, Adtile and Undertone terminated the License Agreement ("Termination Agreement"). (D.I. 33, ex. 16) In relevant part, the Termination Agreement required Undertone to return to Adtile "all copies of the Licensed Software and Licensed Documentation." (*Id.* at § 3) Moreover, § 2.2 of the License Agreement survived the Termination Agreement, therefore, Undertone remained the owner of any deliverables. (*Id.* at § 2)

8. According to Adtile, in June 2015, Perion inquired about using and investing in Adtile's technology.[2] Perion stated that it had also reached out to Undertone, as Undertone used motion-activated ads with great success. Adtile informed Perion that

---

[2] Adtile and Perion previously explored a relationship in August 2014.

4

Undertone was a client and was using Adtile's technology. (D.I. 13 at ¶¶ 38-42) Perion announced on December 1, 2015 that it had acquired Undertone for $180 million. (D.I. 14, ex. A) Adtile has sent cease and desist letters to both Undertone and Perion. (D.I. 12 at 9; D.I. 13 at ¶¶ 47, 64, ex. S)

9. **Standard.** "The decision to grant or deny . . . injunctive relief is an act of equitable discretion by the district court." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1334 (Fed. Cir. 2006). The grant of such relief is considered an "extraordinary remedy" that should be granted only in "limited circumstances." *See Kos Pharma., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). A party seeking preliminary injunction relief must demonstrate: (1) a reasonable likelihood of success on the merits; (2) the prospect of irreparable harm in the absence of an injunction; (3) that this harm would exceed harm to the opposing party; and (4) the public interest favors such relief. *See, e.g., Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012); *Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1344 (Fed. Cir. 2008). "If either or both of the fundamental requirements—likelihood of success on the merits and probability of irreparable harm if relief is not granted—are absent, an injunction cannot issue." *Antares Pharma., Inc. v. Medac Pharma., Inc.*, 55 F. Supp. 3d 526, 529 (D. Del. 2014) (citing *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523 (3d Cir. 1994)). Even if a movant demonstrates a likelihood of success on the merits, there is no presumption of irreparable harm. *See, e.g., eBay*, 547 U.S. at 393. To establish irreparable harm, the movant must "clearly establish[ ] that monetary damages could not suffice." *Id.* at 1348.

5

10. **Likelihood of success on the merits – Delaware statutory misappropriation of trade secrets.** To prevail on a claim of trade secret misappropriation under the Delaware Uniform Trade Secrets Act, a plaintiff must show the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or, alternatively, the "[d]isclosure or use of a trade secret of another without express or implied consent" by a person who either: (1) acquired the secret by improper means; (2) knew or had reason to know that their knowledge of the trade secret was (A) derived by another who acquired it by improper means, (B) "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use," or (C) acquired by accident or mistake. *See* 6 Del. C. § 2001(2). A trade secret

> shall mean information, including a formula, pattern, compilation, program, device, method, technique or process, that:
>     a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>     b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* at § 2001(2).

11. Adtile argues that the same day Undertone signed the Termination Agreement, Adtile discovered a motion-activated ad for Discover. The ad, created by Undertone, included Adtile's proprietary ornamentation, layout, and user experiences, and displayed Adtile's "handphone" image. (D.I. 13 at ¶ 45, ex. Q) Moreover, it alleges that Undertone continued to produce motion-activated ads using Adtile's technology and

6

falsely represented that certain Motion Ads belonged to Undertone alone.[3] (*Id.* at ¶¶ 46-60, exs. R, T, V) More specifically, Adtile argues that Undertone has disclosed and used its trade secrets – certain software and "proprietary ornamentation, layout, and user experiences," as well as the unique combination thereof – outside of the use allowed by the License Agreement. Adtile concludes that the only way for Undertone to make its Motion Ads is to use Adtile's technology. (D.I. 12 at 11-12; D.I. 44 at 2)

12. According to Undertone's declarant, a senior software engineer, the methods for creating motion-activated ads are publicly available. "The code for motion-activated ads can be viewed when an ad is delivered on a web browser; the data from the hardware sensors necessary to create motion-activated ads is readily accessible by using JavaScript; and there are open source libraries available on the Internet to analyze the data." (D.I. 31 at ¶¶ 2, 5-7, 12, 16-18) Adtile also has patents and published patent applications on certain of its technology and design. (D.I. 32, exs. 1-3) Moreover, Undertone uses third-party vendors to create motion-activated ads and also builds such ads in-house,[4] "using standard programming languages alongside publicly-available, open source licensed JavaScript libraries, such as "shake.js." (D.I. 31 at ¶¶ 14-15)

13. In 2009, Medialets created the first shakable advertisement for Levi's Dockers, shortly after Apple released the iOS3 operating system in 2009.[5] Other

---

[3] As to Perion, Adtile maintains that together with Undertone, Perion continues to produce mobile ads using Adtile's confidential and trade secret information and featuring Adtile's copyrights and trademarks. (D.I. 13 at ¶¶ 61-68; D.I. 14, ex. B, C)
[4] Having additionally acquired Sparkflow in June 2015, a third-party company that independently designed a platform with the capability of building motion-activated ads.
[5] Eric Litman, *Medialets Shakes Up Mobile Advertising* (April 22, 2009), https://www.medialets.com/medialets-shakes-up-mobile-advertising/.

7

companies such as Olive Media and Leadbolt followed suit. Today, there are several key players who create, market and sell motion-activated ads, including Sizmek, Celtra, Kargo, and Google. (D.I. 33 at ¶¶ 6-8) On the record at bar, Adtile has alleged trade secrets in its Motion Ads. Adtile does not exclude subject matter, such as the previously publically available Full-Tilt software,[6] visual details of published Motion Ads, or patented material. *Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, Civ. No. 98-80-SLR, 2005 WL 388592, at *1, n.1 (D. Del. Feb. 2, 2005) (Publication of a patent containing a trade secret destroys the trade secret, as it "put[s] the world on notice."); *Sun Media Sys., Inc. v. KDSM, LLC*, 564 F. Supp. 2d 946, 969 (S.D. Iowa 2008) (Well-known and common-sense methods throughout the advertising industry may not properly be considered proprietary information.). The court cannot discern what (if any) trade secrets Adtile does possess, i.e., what information is in fact not "generally known to" or "readily ascertainable by proper means" by Undertone and others.[7]

14. Adtile argues that Undertone's continued production of Motion Ads and the "striking visual and user experience similarity" between such post and pre-License Agreement ads evidences misappropriation. Adtile does not address Undertone's contentions that certain information used to make its Motion Ads is publically available or that Undertone creates such ads with different technology. Nor does Adtile address the fact that Undertone hires third parties to create Motion Ads, other than to contend

---

[6] Adtile provides no explanation on how parties previously using open source code may now be said to be using confidential or copyrighted material.

[7] That Adtile points to correspondence from Undertone stating that it would return and destroy Adtile's information does not help to inform the court about what information is properly considered a trade secret. (D.I. 13, exs. U, W)

8

that Undertone must have provided such parties with Adtile's trade secrets. The record at bar does not include persuasive evidence that Undertone is using Adtile's purported trade secrets.[8]

15. **Likelihood of success – common law misappropriation of confidential information.** A plaintiff asserting a claim for misappropriation or conversion of confidential information must plead that: (1) it had a property interest in the confidential information; (2) the defendant wrongfully exerted dominion over the confidential information; and (3) the plaintiff sustained damages as a result. *Sustainable Energy Generation Grp., LLC v. Photon Energy Projects B.V.*, Civ. No. 8524-VCP, 2014 WL 2433096, at *14 (Del. Ch. May 30, 2014) (citation omitted). Adtile alleges, using the same reasoning described above regarding trade secrets, that it had confidential information and that defendants misappropriated it. That Adtile shared confidential information with Undertone under the License Agreement and NDA is a reasonable conclusion. However, as with the trade secret allegation, Adtile has not separated such confidential information from any publically available information. Without such delineation, the court cannot conclude that Adtile has a property interest in the allegedly confidential information or that Undertone is currently using the allegedly confidential information.[9]

---

[8] The parties also dispute whether a single demo ad created by Adtile and provided to Undertone is a deliverable (Undertone's position) or rightly belongs to Adtile (Adtile's position). This dispute does not create an issue for the present analysis, as Adtile created such ad.

[9] The court does not reach defendants' additional argument that this claim fails against Undertone as "arising from" the breach of contract claim. (D.I. 30 at 11)

9

16. **Likelihood of success – copyright infringement.** To establish copyright infringement, Adtile must prove that (1) it owns a valid copyright, and (2) the defendants copied protectable elements of the copyrighted work. *Feist Publications Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "[C]opying may be proved inferentially by showing that the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." *Whelan Associates, Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231-32 (3d Cir. 1986).

> Copyright certificates produced by a plaintiff constitute prima facie evidence of both copyright validity and ownership. One element of copyright validity is the originality of the work; a certificate provides prima facie evidence of such originality. This prima facie presumption of validity and ownership is rebuttable; where evidence in the record casts doubt on the issue, there is no assumption of validity. A defendant may rebut the prima facie effect of a copyright registration by producing evidence that the copyrighted work was itself copied from another work, thus challenging the originality of plaintiff's work. Upon proof by a defendant that a plaintiff had access to similar prior works, the burden of proving originality shifts back to plaintiff.

*Midway Mfg. Co. v. Bandai-Am., Inc.*, 546 F. Supp. 125, 139 (D.N.J. 1982) (citations omitted).

17. Undertone challenges the validity of the handphone copyright by presenting the results of a "Google Image Search" of "hand phone icon" to show that many similar icons exist. (D.I. 33, ex. 12) Adtile alleges that such a search has no relevance as it was conducted in 2016, "well after Adtile spent significant time independently creating the 'handphone'" image. (D.I. 44 at 6-7)

18. In the case at bar, a review of the parties' briefing and evidence reveals that Adtile registered the copyright for the handphone image on June 19, 2015. (D.I. 13, ex.

10

F) Undertone had access to the handphone image during the period of licensing. Such image (without any attribution) was provided to Undertone in two of the Motion Ads Adtile created under the License Agreement (the Nestlé Perrier Motion Ad created in November 2014, and Estee Lauder ad created in December 2014). (D.I. 33 at ¶ 24) Undertone then used the handphone image in the Discover ad. After receiving a cease and desist letter, Undertone took down both the Nestlé Perrier and Discover ads and discontinued use of the handphone image. Although neither party further analyzed the Google search results to determine if any of the handphone icons were created or existed prior to 2014, such an argument is reasonable given the ubiquity of cellphones in 2014. At the present time, defendants are not using the handphone image, rendering any argument as to ongoing harm to Adtile moot.[10]

19. As to the Full-Tilt Library software, Adtile states that the "analysis of Undertone's ads revealed that the source code for such ads copy the copyrighted software." (D.I. 12 at 15) Again, Adtile does not explain how it distinguishes the copyrighted "version" from the public open-source "version." As with the handphone image, Undertone has represented that it does not currently use the Full-Tilt Library software.

20. **Likelihood of success – false designation of origin and unfair competition.** To succeed on this claim, plaintiff must prove by a preponderance of the evidence that: (1) defendants use a false designation of origin; (2) such use occurs in interstate commerce in connection with goods and services; (3) such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or

---

[10] Defendants' representation to the court at oral argument (March 22, 2016).

11

approval of plaintiff's goods or services by another person; and (4) plaintiff has been or is likely to be damaged. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir. 1994) (citing 3 *McCarthy on Trademarks*, § 27.03[1][a] at 27-21.9); 15 U.S.C. § 1125(a).

21. Adtile alleges that Undertone is taking credit for Adtile's Motion Ads (for example, the Nestlé Perrier Motion Ad) and has even accepted an award for a Motion Ad without giving Adtile credit. More specifically, Undertone's "false designation of origin is demonstrated by its use of Adtile's 'handphone' mark as a source indicator." (D.I. 12 at 16) Adtile concludes that this is likely to cause confusion or mistake as to the origin of the Motion Ads or indicate that Adtile approves the ads. To support the allegation of confusion, Adtile's declarant, its founder and CEO, states generally that he "received a number of complaints from prospective advertisers and others in the industry expressing confusion based on the Undertone ads." He points to one instance at a tradeshow on September 21-23, 2015, where two attendees came to the Adtile booth and stated that they had seen Adtile's "Vita Coco" ad with the handphone image. Such ad was actually created by Undertone. (D.I. 13 at ¶ 53) Adtile further alleges that the handphone image is inherently distinctive and "is a source designation for Adtile."

22. Adtile has applied for a trademark in the handphone image, but has yet to receive it. "Where a mark has not been federally registered or has not achieved incontestability, validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991) (citations omitted). "Where the trademark owner and the alleged infringer deal in competing goods or services, the

court need rarely look beyond the mark itself. In those cases the court will generally examine the registered mark, determine whether it is inherently distinctive or has acquired sufficient secondary meaning to make it distinctive, and compare it against the challenged mark." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983). In the case at bar, Adtile has not offered analysis to support its allegation that the handphone image is inherently distinctive. Moreover, Adtile provided Undertone two Motion Ads under the License Agreement, which included the handphone image without attribution. Those ads were deliverables and, as such, belong to Undertone. In sum, Adtile has not met its burden as to likelihood of confusion.

23. **Likelihood of success on the merits – conclusion.** Adtile seeks to establish likelihood of success on the merits for four causes of action: Delaware statutory misappropriation of trade secrets, common law misappropriation of confidential information, copyright infringement, and Lanham Act false designation of origin and unfair competition. The court has determined that Adtile's trade secrets and confidential information are not sufficiently delineated from what is either publically available (the Full-Tilt software) or discernable from the Motion Ads (the visual pieces and related code). That Adtile included, without attribution, the handphone image in two ads provided to Undertone as deliverables under the License Agreement weakens Adtile's copyright and trademark infringement arguments. The court concludes that Adtile has not shown likelihood of success on the merits.

24. **Irreparable harm.** Adtile alleges that money damages will not suffice to compensate it for the erosion of its market share, profits, and the premium price its Motion Ad products command. According to Adtile, it is losing the opportunity to

develop its client base. (D.I. 12 at 17) Defendants respond that Adtile delayed in filing the action at bar and seeking the present injunction; the parties were able to quantify the value of Adtile's technology and product by assigning a price to the deliverables under the License Agreement; and Adtile does not offer evidence in support of its statement that it is losing market share and profits. (D.I. 30 at 15-17) This factor is neutral.

25. **Reputation and goodwill.** Adtile alleges that its goodwill and reputation are being damaged by defendants' unfair competition and conduct. (D.I. 12 at 17) Specifically, Adtile's declarant states that, without an injunction, "Adtile will lose its reputation as the creator of the revolutionary Motion Ad," in part because customers may believe that "Undertone's lower quality sensor-enabled product is produced by Adtile." (D.I. 13 at ¶ 67-68) Defendants respond that such statements are belied by a public article, dated December 21, 2015, wherein Adtile's declarant explained that "a major wireless phone carrier – LG Uplus of South Korea – recently picked up the technology, rolling it out over its entire network." (D.I. 32, ex. 4) This factor is neutral.

26. **Irreparable harm – conclusion.** Adtile and Undertone previously agreed on monetary compensation for Motion Ads made by Adtile for Undertone. The court cannot delineate on the record at bar what, if any, trade secrets and confidential information Adtile possesses, which cuts against the grant of injunctive relief. *Cf. Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163-65 (3d Cir. 1982) (affirming the grant of a preliminary injunction on trade secret claims).

27. **Balance of hardships.** This factor is largely neutral. Adtile seeks to prevent defendants from selling any motion-activated ads, regardless of source. Adtile

14

alleges that it stands to lose significant revenues, a stellar reputation as a technology innovator, and substantial market share without an injunction. According to Adtile, it is losing its first-to-market advantage and is being forced to compete against defendants for its own technology. (D.I. 12 at 18-19) Defendants have offered evidence that they produce motion-activated ads in-house and also purchase such ads from third parties. Defendants stand to lose substantial contracts and relationships if enjoined. Such a disruption would also cause harm to third parties, which have contracted with Undertone. (D.I. 30 at 18-19)

28. **Public interest.** This factor is largely neutral. The public has an interest in trade secrets and confidentiality agreements, as well as preventing copyright infringement. However, Adtile has not shown a likelihood of success on these causes of action. Moreover, certain of the disputed information is publically available or may be gleaned from viewing and dissecting published Motion Ads. As discussed above, Adtile is not the only company involved in the making of motion-activated ads, yet it seeks to have the court enjoin defendants from making, buying, or selling any motion-activated ads, i.e., wholly eliminate one of its competitors.

29. **Conclusion.** For the foregoing reasons, Adtile's motion for preliminary injunction (D.I. 11) is denied.

_____
United States District Judge