IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ADTILE TECHNOLOGIES INC.,

Plaintiff,

v.

PERION NETWORK LTD. and INTERCEPT INTERACTIVE, INC. d/b/a UNDERTONE,

Defendants.

Civ. No. 15-1193-SLR

---

Donald E. Reid, Esquire of Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Greg L. Lippetz, Esquire of Jones Day.

David E.Moore, Esquire, Bindu A. Palapura, Esquire, and Stephanie E. O'Byrne, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Jonathan M. Wagner, Esquire, Tobias B. Jacoby, Esquire, and Adina C. Levine, Esquire of Kramer Levin Naftalis & Frankel LLP.

---

**MEMORANDUM OPINION**

Dated: June 24, 2016
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On December 22, 2015, plaintiff Adtile Technologies, Inc. ("Adtile") filed a complaint for breach of contract, breach of the covenant of good faith and fair dealing, misappropriation of trade secrets and confidential information, copyright and trademark infringement, unfair competition, false designation of origin, common law trademark infringement, and common law unfair competition against defendants Perion Network Ltd. ("Perion") and Intercept Interactive, Inc. d/b/a Undertone ("Undertone"). (D.I. 1) Presently before the court are Perion's motion to dismiss the complaint for lack of personal jurisdiction (D.I. 22) and Undertone's motion to stay the present action and compel arbitration (D.I. 25). The court has jurisdiction over the copyright and Lanham Act claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) and 15 U.S.C. § 1121(a). The court has supplemental jurisdiction over Adtile's additional claims pursuant to 28 U.S.C. § 1367(a).

## II. BACKGROUND

Adtile is a company organized under the laws of the State of California with its principal place of business in San Diego, California. Adtile develops multi-sensor advertising technology and services for smartphones and tablets, with a focus on mobile "Motion Ads." (D.I. 1 at ¶ 8) Undertone is a marketing company organized under the laws of the State of New York with a principal place of business in New York, New York. Perion is a company organized under the laws of Israel with a principal place of business in Holon, Israel. (D.I. 1 at ¶¶ 9-10)

Since 2013, Adtile has developed and launched Motion Ads, which provide users a unique motion-activated advertising experience. On February 14, 2014, Undertone and Adtile entered into discussions regarding Adtile's sensor-enabled technology pursuant to a non-disclosure agreement dated March 11, 2014 ("March NDA"). On August 18, 2014, the parties entered into a license agreement (the "License Agreement") and a new NDA, which provides that Adtile would produce Motion Ads and Undertone would sell such ads to its customers. (D.I. 33, ex. 11) On June 12, 2015, Adtile and Undertone terminated the License Agreement (the "Termination Agreement"). (D.I. 33, ex. 16) The License and Termination Agreements provide for the resolution of disputes according to the laws of the State of Delaware. (D.I. 33, exs. 11, 16)

According to Adtile, in June 2015, Perion inquired about using and investing in Adtile's technology.[1] Perion stated that it had also reached out to Undertone, as Undertone used motion-activated ads with great success. Adtile informed Perion that Undertone was a client and was using Adtile's technology. (D.I. 13 at ¶¶ 38-42) Perion announced on December 1, 2015 that it had acquired Undertone for $180 million. (D.I. 14, ex. A) Perion refers to Undertone as its "digital advertising firm." (D.I. 14, ex. B)

## III. PERSONAL JURISDICTION

### A. Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure directs the court to dismiss a case when the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by plaintiff and resolve all factual disputes in

[1] Adtile and Perion previously explored a relationship in August 2014.

plaintiff's favor. *Traynor v. Liu,* 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n.9 (3d Cir. 1984).

Pursuant to the relevant portions of Delaware's long-arm statute, 10 Del. C. § 3104(c)(1)-(4), a court may exercise personal jurisdiction over a defendant when a defendant or its agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 Del. C. § 3104(c)(1)-(4). With the exception of (c)(4), the long-arm statute requires a showing of specific jurisdiction. *See Shoemaker v. McConnell,* 556 F. Supp. 2d 351, 354, 355 (D. Del. 2008). Subsection (4) confers general jurisdiction, which requires a greater number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. *See Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F. Supp. 1458, 1466 (D. Del. 1991).

If a defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process, to wit, whether plaintiff has demonstrated that defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state," so that it should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (citations omitted). For the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from defendant's activities in the forum State. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). For the court to exercise general personal jurisdiction consistent with due process, plaintiff's cause of action can be unrelated to defendant's activities in the forum state, so long as defendant has "continuous and systematic contacts with the forum state." *Applied Biosystems,* 772 F. Supp. at 1470. In *Daimler AG v. Bauman,* —— U.S. ——, 134 S.Ct. 746 (2014), the Supreme Court stated that the "paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Id.* at 749. The Supreme Court did not hold that a corporation may be subject to general jurisdiction only in one of these locations, but rejected the notion that "continuous and systematic" contacts alone could confer general jurisdiction, clarifying that the role of general jurisdiction is to "afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* at 760-62.

**B. Specific Jurisdiction**

Adtile contends that this court has specific jurisdiction, because of Perion's ownership of Undertone and because Perion has marketed Undertone's "UMOTION"

ads as its own. More specifically, the License and Termination Agreements entered into by Undertone and Adtile select Delaware as an appropriate forum for the resolution of disputes. Perion refers to Undertone as its "digital advertising firm." Perion advertises and supports the sales of motion-activated ads by Undertone, which ads "are sold to Delaware customers for viewing by Delaware end users." In a December 2015 S&P Capital IQ Company Report on Perion, Perion included on its product list certain products purportedly developed by Undertone. Adtile further contends that Perion has a corporate officer (and another employee) who list their place of employment on LinkedIn as "at Perion/Undertone," which demonstrates a lack of corporate separateness. (D.I. 34 at 6-9; D.I. 36 at ¶¶ 2, 13, exs. A, L)

Specific jurisdiction arises when a defendant has both purposefully directed its activities at residents of the forum state and the action arises from, or is directly related to, defendant's action within the forum state. *See Burger King Corp.*, 471 U.S. at 472. Adtile asks this court to subject Perion to Delaware jurisdiction based on Undertone's actions; however, "mere ownership of a subsidiary does not subject the parent corporation to personal jurisdiction in the state of the subsidiary." *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 420 (E.D. Pa. 2005); *see Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d 800, 805-06 (3d Cir. 1981) ("[A] foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in that state."); *see also Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336 (1925). To hold Perion responsible for its subsidiary's actions, Adtile must convince the court to pierce the corporate veil under an agency or alter-ego theory. *Action Mfg. Co.*, 375 F. Supp. 2d at 421.

A court may pierce the corporate veil in order to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967). The Third Circuit test is composed of two parts: the alter ego test and the agency test. *Lucas*, 666 F.2d at 806. The alter ego test requires that the court "ignore the corporate boundaries between parent and subsidiary if fraud or inequity is shown." *Applied Biosystems*, 772 F. Supp. at 1463. The agency test considers

> the degree of control which the parent exercises over the subsidiary. The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant.

*Id.* In essence "[t]he activities of a parent company are imputed to the subsidiary only if the subsidiary is the parent's agent or alter ego so that the "'independence of the separate corporate entities [is] disregarded.'" *Fisher v. Teva PFC SRL*, 212 F. App'x 72, 76 (3d Cir. 2006) (quoting *Lucas*, 666 F.2d at 806). Adtile's evidence includes LinkedIn listings of "Perion/Undertone" as the employment place for a corporate officer (and another employee) and general allegations of a lack of corporate separateness. Adtile has not produced any evidence to show that Undertone does not "make [its] own decisions about day-to-day activities," including "design[ing], manufactur[ing], market[ing], and distribut[ing]." *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 645 (D. Del. 2006). Perion, through a sworn affidavit, states that Perion and its subsidiaries maintain separate books, records, and accounts. (D.I. 24 at ¶ 10) Although Adtile demonstrates an overlap of one director between Perion and Undertone, the test requires a "specific **combination** of elements." *Applied*

*Biosystems*, 772 F. Supp. at 1463 (emphasis added). The allegations are insufficient to support an agency or alter ego theory and, therefore, Adtile has not sufficiently alleged that the court should pierce the corporate veil and attribute Undertone's actions to Perion.

The Third Circuit Court of Appeals uses a "purposeful availment" test for deciding whether a defendant's internet website meets the *Burger King* test for specific jurisdiction. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003). Adtile asks the court to subject Perion to specific jurisdiction in Delaware based on "ongoing sales and advertisement of infringing motion-activated ads sold across the country, including in Delaware," rather than a "specific injury limited to one geographic location." (D.I. 34 at 10) Specifically, Adtile submits that Perion has advertised infringing ads[2] as its own on Perion's website, without mention of Undertone. (D.I. 34 at 8; D.I. 36 at ¶ 6, ex. E) For advertisements to grant personal jurisdiction under Delaware's long arm statute, they "must be specifically directed toward Delaware residents." *Applied Biosystems*, 772 F. Supp. at 1467. Adtile has not alleged, let alone submitted evidence, that any advertisement was specifically directed towards Delaware. On the other hand, Perion has submitted an affidavit that it does not conduct business in Delaware and that its website is informational and does not allow consumers to purchase goods or services. (D.I. 24 at ¶¶ 4-9) Adtile's stream of commerce allegations are similarly unpersuasive. Adtile has not introduced evidence to meet its burden of demonstrating that Perion had an intent to serve the Delaware market by

[2] Without distinguishing which ads target or are sold in Delaware.

placing its goods in the United States stream of commerce. *DNA Genotek Inc. v. Spectrum DNA*, 2016 WL 450044, at *2 (D. Del. Feb. 4, 2016).

**C. General Jurisdiction**

Perion is not incorporated in Delaware and does not have an office or employees in Delaware. (D.I. 43 at 5; D.I. 24 at ¶ 5) As evidence of Perion's contacts with Delaware, Adtile submits a declaration stating that Perion works directly with companies incorporated in Delaware (such as Twitter, Lenovo, and APN LLC). Perion derives the "majority" of its revenue from service agreements with its search partners, one of which is a Delaware corporation. Moreover, Perion has acquired two Delaware corporations. (D.I. 36 at ¶¶ 4, 9, 11, 12 15)

According to the Supreme Court, "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business' . . . is unacceptably grasping." *Daimler*, 134 S. Ct. at 761. "Accordingly, the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* at 761 (citation and internal quotations omitted).

In the case at bar, the exercise of general jurisdiction over Perion based on the cited relationships with Delaware would be the type of "unacceptably grasping" test the Supreme Court in *Daimler* sought to avoid. Similarly, Adtile's contention that Perion's nationwide sales qualify as business in each state, conferring general jurisdiction in Delaware, is too broad. *See id.* at 762 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."). The Supreme Court's

decision in *Daimler* expressly contradicts Adtile's position regarding Delaware subsidiaries by rejecting the exercise of general jurisdiction over a company "wherever they have an in-state subsidiary or affiliate." *Id.* at 760.[3]

Given that Perion is an Israeli corporation, the court looks to Rule 4 of the Federal Rules of Civil Procedure for claims that arise under federal law: "[S]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). The rule provides a "narrow exception" when a plaintiff makes "an affirmative representation that the defendant is not subject to the general jurisdiction of any state court." *Monsanto Co.*, 443 F. Supp. 2d at 647; see *United States. v. Offshore Marine Ltd.*, 179 F.R.D. 156, 160 (D.V.I. 1998) ("Accordingly to survive a motion to dismiss for want of personal jurisdiction, the plaintiff bears the burden to prove that [defendant] is not otherwise subject to service of process in any state"); *see also Commisseriat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 293 F. Supp. 2d 423, 430 (D. Del. 2003) (holding that simply establishing United States contacts was not enough to prove defendant could not be subject to suit in any state). Adtile claims that the burden shifts to Perion, but does not demonstrate in the first

[3] Adtile contends that the Delaware subsidiaries' websites confer general jurisdiction through the subsidiaries' commercial activity. However, Adtile incorrectly attributes the activity on the websites to Perion. Even if the court were to consider the subsidiaries' websites, Adtile has not demonstrated that these websites have provided services to Delaware residents and, "[i]nstead, plaintiff has merely concluded that, because defendant has not excluded Delaware from accessing its website, it has subjected itself to the jurisdiction of the Delaware courts." (D.I. 36); *inno360, Inc.*, 50 F. Supp. 3d at 595.

instance that Perion is not subject to suit in any other state. *See Monsanto Co.*, 443 F. Supp. 2d at 647 (dismissing a case where plaintiff attempted "to shift the burden . . . by arguing that, if the court finds no jurisdiction lies in Delaware, then no jurisdiction lies in any other state and Rule 4(k)(2) applies"). The court grants Perion's motion to dismiss.[4, 5]

## IV. ARBITRATION

### A. Agreements

The License Agreement[6] provides that Adtile owned the proprietary licensed software product – the Ad Builder (the "Licensed Software") – and any related documentation (the "Licensed Documentation"). (D.I. 33, ex. 11 at §§ B, C) Undertone was allowed to use the Licensed Software and Licensed Documentation for its internal purposes, but Adtile was allowed to approve the showing of any ads created with the Licensed Software. (*Id.* at § 1.1(a)) The License Agreement further provides that Undertone owns any "deliverables," i.e., work product produced by Adtile for Undertone. Undertone is deemed the author of the deliverables for copyright purposes. Adtile retains the ownership of "all technology," including the code libraries developed for the Motion Ads and used by Adtile to provide deliverables. (*Id.* at § 2.2)

The License Agreement includes a section captioned, "Governing Law; Dispute Resolution," which provides that the License Agreement "shall be governed by and

---

[4] Adtile has not made a prima facie case of personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) ("If the district court does not hold an evidentiary hearing, 'the plaintiff[s] need only establish a prima facie case of personal jurisdiction.'").
[5] Perion's motion to dismiss for failure to state a claim is moot.
[6] Executed on August 26, 2014.

construed according to the laws of the State of Delaware" and "[a]ny controversy or claim arising out of or relating to this Agreement will be settled by binding arbitration." Specifically, "[a]rbitration will be by the JAMS and will be referred to a single neutral arbiter for final determination under the JAMS Comprehensive Arbitration Rules . . . and held in Wilmington, Delaware."[7] (*Id.* at § 9.11) A merger clause recites, "[t]his Agreement, including any exhibits and addenda, constitutes the entire understanding and agreement between the parties with respect to the subject matter hereof and supersedes any and all prior or contemporaneous oral or written communications with respect hereto, all of which are merged herein." (*Id.* at § 9.13)

The License Agreement refers to "a separate [NDA], a form of which is attached hereto as Exhibit A, concurrently with the execution of this Agreement and as a condition precedent to the effectiveness hereof." (*Id.* at § 9.14) The NDA[8] includes a section captioned, "Governing Law," which recites that "Delaware law shall govern the interpretation of this [NDA], without reference to rules regarding conflicts of law. Any dispute arising out of this [NDA] shall be submitted to a state or federal court sitting in Wilmington, Delaware, which shall have the exclusive jurisdiction regarding the dispute and to whose jurisdiction the Parties irrevocably submit."[9] (*Id.*, NDA at § 11) The NDA further provides that "[t]his [NDA] constitutes the Parties' entire [NDA] with respect to

---

[7] This section also provides that "[n]othing in this section will prevent any party from seeking or obtaining injunctive relief and other remedies available under these provisions."

[8] Entered into "as of the Effective Date" of the License Agreement and executed on August 26, 2014.

[9] Undertone and Adtile previously entered into the March NDA to facilitate discussions, which also chose Delaware law, but specified that disputes should be submitted to a state or federal court in Riverside County, California. (D.I. 13, ex. I)

the subject matter hereof and supersedes any and all prior statements or agreements, both written and oral." (*Id.*, NDA at § 14)

The Termination Agreement provides that certain specified provisions of the License Agreement and NDA survived the Termination Agreement. (D.I. 33, ex. 16 at § 2) It also contains a section "Governing Law; Dispute Resolution," which includes the same broad and mandatory arbitration provision included in the License Agreement. (*Id.* at § 6.9)

**B. Standard**

It is presumed that courts must decide questions of arbitrability "unless the parties clearly and unmistakably provide otherwise." *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335 (3d Cir. 2014) (citations omitted). The Third Circuit has observed that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [American Arbitration Association ("AAA")] rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability" in the context of bilateral arbitration disputes.[10] *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763-64 (3d Cir. 2016) (collecting cases); *see also URS Corp. v. Lebanese Co. for Dev. & Reconstruction of Beirut Cent. Dist. SAL*, 512 F. Supp. 2d 199, 207 (D. Del. 2007) (finding that plaintiff "failed to demonstrate that an order by this court on the issue of arbitrability prior to a decision by the ICC tribunal [would] adhere to the purposes of the New York Convention, when the "ICC rules make

[10] Ultimately concluding that incorporation of the AAA rules was insufficient, in and of itself, to delegate to an arbitrator the question of whether class-wide arbitration is permissible. *Chesapeake*, 809 F.3d at 764-66.

clear that the question of arbitrability will ultimately be addressed by the ICC tribunal composed of the confirmed arbitrators").

According to the JAMS Comprehensive Arbitration Rules, the "Parties shall be deemed to have made these Rules a part of their Arbitration agreement . . . whenever they have provided for Arbitration by JAMS under its Comprehensive Rules or for Arbitration by JAMS without specifying any particular JAMS Rules . . . ." (D.I. 27, ex. C at Rule 1(b)). Moreover, JAMS provides that:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and **arbitrability issues as a preliminary matter**.

(*Id.* at Rule 11(b)) (emphasis added)

**C. Analysis**

Adtile concedes that its breach of contract and breach of the covenant of good faith and fair dealing are properly arbitrable, but argues that each other claim – misappropriation of trade secrets and confidential information, copyright and trademark infringement, unfair competition, false designation of origin, common law trademark infringement, common law unfair competition – are not subject to arbitration. Each of Adtile's claims arise from the following set of facts. Adtile and Undertone entered into the License Agreement. Adtile shared with Undertone certain material, which is allegedly copyrighted, trademarked, confidential, or trade secret information.[11] Undertone and Adtile terminated the License Agreement. Undertone continued using

[11] Details of such allegations are recited in more detail in the order on Adtile's motion for preliminary injunction.

the shared information. Both the License Agreement and the Termination Agreement reference such material and the distribution thereof. (*See e.g.*, D.I. 33, ex. 11 at § 2.2; ex. 16 at §§ 2, 3) The NDA contains a "Governing Law" provision, however, both the License Agreement (which contains a merger clause and includes the NDA as an exhibit) and the Termination Agreement contain a broad arbitration clause. Moreover, although the NDA does not contain an arbitration provision, it broadly defines "confidential information" as "any information furnished or disclosed, in whatever form or medium," relating to Adtile's business and includes "business procedures, processes, techniques, methods, ideas, . . . product designs, source codes, product planning, trade secrets, . . . and material samples, [as well as] any Ad Materials or information from an Advertiser IO" as defined in the License Agreement.[12] The NDA's confidential information necessarily overlaps with the information shared pursuant to the License Agreement and central to the disputes at bar. Adtile and Undertone agreed to submit "any controversy or claim arising out of or relating to" the License and Termination Agreements to arbitration.[13] The court concludes that the arbitrator is tasked with determining whether Adtile's claims at bar are subject to arbitration. *See Li v. Standard Fiber, LLC*, Civ. No. 8191-VCN, 2013 WL 1286202, at *6 (Del. Ch. Mar. 28, 2013) (finding that "together the broad arbitration clause and the reference to the JAMS Rules clearly show that the parties intended to arbitrate issues of substantive arbitrability with respect to disputes that relate to the prior agreements").

**V. STAY**

---

[12] The March NDA uses substantially the same broad definition of confidential information. (D.I. 13, ex. I at § 2)

[13] The court has separately addressed Adtile's motion for preliminary injunction.

The FAA mandates that district courts shall stay proceedings while arbitration is pending if a suit is brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" and the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement . . . ." 9 U.S.C. § 3. The FAA limits the role of courts to determine: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement. *John Hancock Mutual Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998). Courts generally operate under a pronounced "presumption of arbitrability." *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).

> When determining whether a given claim falls within the scope of an arbitration agreement, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." "If these factual allegations 'touch matters' covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them." Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

*Varallo v. Elkins Park Hosp.*, 63 F. App'x 601, 603 (3d Cir. 2003) (citations omitted).

The parties do not dispute whether the arbitration provision is valid, instead, Adtile argues that with the exception of the breach of contract and breach of the covenant of good faith and fair dealing, its claims are not subject to arbitration. The court has determined that whether Adtile's claims at bar are subject to arbitration is properly determined by the arbitrator. As discussed above, each of Adtile's claims stem from the same factual allegations and may be properly said to touch upon the License

and Termination Agreements. The court will stay the proceeding pending completion of arbitration.

## VI. CONCLUSION

For the foregoing reasons, Perion's motion to dismiss the complaint for lack of personal jurisdiction (D.I. 22) is granted; and Undertone's motion to stay the present action and compel arbitration (D.I. 25) is granted. An appropriate order shall issue.